Dodd *et al.*, assignees, *vs.* Middleton *et al.*

1. The United States courts have exclusive jurisdiction of all matters and proceedings in bankruptcy.
2. A bill in equity which shows that the rights claimed accrued to the complainants as assignees of a bankrupt, is on its face such a proceeding. When brought in a state court, it will be dismissed on motion for want of jurisdiction.

Bleckley, Justice, dissented.

United States Courts. Jurisdiction. Bankrupt. Before Judge Clark. Fulton Superior Court. March Term, 1879.

Complainants brought their bill to recover of defendants certain property. The bill showed that complainants claimed by virtue of being assignees of West, Edwards & Co., bankrupts. On motion the bill was dismissed for want of jurisdiction in the state court where it was brought. Complainants excepted.

P. L. Mynatt; Henry Hillyer, for plaintiffs in error.

H. K. McCay; Jno. L. Hopkins, for defendants.

WARNER, Chief Justice.

The error complained of in this case is the dismissal of the plaintiffs' suit for want of jurisdiction, under the ruling of a majority of this court in *Dodd et al. vs. Hammock et al.*, 59 *Ga.*, 403, and the court was asked to review its decision in that case. The majority of the court have attentively listened to the argument for the plaintiffs in error in favor of the reversal of its ruling in the above cited case, and after duly considering the same, have come to the conclusion to reaffirm it, at least until the supreme court of the United States shall give to the acts of congress a different interpretation. Let the judgment of the court below be affirmed.

JACKSON, Justice, concurring.

I am of the opinion that when the estate of a bankrupt is administered one court should administer it. The framers of the American constitution seem to have had unity of administration in view when congress was invested with power to pass uniform laws on the subject of bankruptcy. Unless uniformly administered, the uniform enactment becomes almost necessarily multiform. Courts differ in construction, and the intent of the constitution is defeated by our complex system and our diverse constructions. Whilst, therefore, the question is settled by the adjudication of a majority of the state courts, and especially of the supreme court of the United States, the last appellate tribunal on questions arising under the constitution and laws of the United States, that before the revised statutes the courts of the states had concurrent jurisdiction with those of the United States of suits brought to recover the assets of the bankrupt, it is not plain to a plain mind that the question was rightly settled. The constitution requires the law to be uniform, and if uniformity of construction is essential to carry into effect the uniformity of enactment in a uniform manner, and if courts many and jurisdictions

many have precisely the opposite tendency, it is reasonable to presume that congress designed to give to the United States courts the exclusive jurisdiction. But that is settled ; let it stand settled.

Afterwards the Revised Code was enacted, and by that Code exclusive jurisdiction is vested in the courts of the United States " in matters and proceedings in bankruptcy." Is the collection of the assets of the bankrupt one of the matters and proceedings in bankruptcy ? It is the root of the whole system—the *sine qua non*, without which there can be no administration of the assets. The great purpose of the act is to relieve the debtor from his past indebtedness and to pay his debts with the assets he returns. Many of these assets are *choses in action*, and unless they can be collected there can be no complete administration of the assets, for the reason that the court has not possessed itself of them so as to administer them. That the assignee may collect them through the district and circuit courts of the United States, is clear ; and therefore the analogy between those courts, or the district court and our courts of ordinary in respect to the grant of power to administer the estates of deceased persons, fails, for the reason that our courts of ordinary have no jurisdiction to collect anything by suits therein, and never did have any.

But the jurisdiction of the courts of the United States in matters and proceedings in bankruptcy is defined in the original bankrupt act, and is expressly given, among other matters, *to collect the assets of the bankrupt* ; and by the revised statutes the jurisdiction of those courts in matters and proceedings in bankruptcy is made exclusive. It would seem to follow that the part of the jurisdiction in respect to the collection is rendered by that enactment as *exclusive* as is the administration of the assets when collected, and the final discharge of the bankrupt; or any other matter or proceeding necessary to reach the consummation of the entire object of all the matters and proceedings, to-wit, the payment of the bankrupt's debts as far as his assets will

pay them, and his final discharge from the indebtedness which those assets will not be sufficient to pay.

The words "matters and proceedings in bankruptcy," strike me as very broad and comprehensive. I can hardly conceive of two words which could well embrace greater compass. A suit is certainly a "proceeding." The very origin of the term imports a procession. I believe it is derived from the French word which means to follow; and in olden time the suitor was followed by his suit, or those who backed him; and thus instituted the suit with the procession which followed him. So the word "*matters*" would seem to embrace the collection of the property of the bankrupt as the very gist of the matter, the marrow, the cream, the fruit of all the matters in bankruptcy, so far as an honest administration of those matters affected the bankrupt's creditors.

In addition to the reasons given by the chief justice when this question was before decided by us, I venture to throw out these suggestions. The dissent of my able and learned associate always makes me distrustful of my own ruder judgment, even when fortified by the venerable chief justice who has so long presided in this court and whose life is indissolubly interwoven with the growth of the jurisprudence of Georgia from its root in first Kelly to the latest leaf upon it now; and when that dissent is sustained, in great measure at least, by the highest courts in Massachusetts and New York, the distrust is necessarily increased. The opinion of Mr. Justice Bradley, cited by Judge McCay, in which the same broad construction of the words "matters and proceedings in bankruptcy" was given in order to confer jurisdiction on the circuit courts of the United States over suits for the assets of the bankrupt in states other than where the petition was filed, would seem, however, to strengthen the view of the majority of this court; and then the fact that the supreme court of the United States, in a case decided in 97 U. S., confined their judgment that the state courts still had concurrent jurisdic-

tion to collect the bankrupt's assets since the passing of the revised statutes, to cases arising and suits brought before that Code was adopted, would seem to add greater weight to the correctness of our opinion.

At all events, until the question shall have been decided by the supreme court of the United States adversely to the judgment heretofore rendered by the majority of this court, I must adhere to the view taken of the question before, and concur in the affirmance of the judgment of the superior court.

BLECKLEY, Justice, dissenting.

If I could be reinforced here by the votes, as I am by the opinions of the supreme judicial court of Massachusetts and the court of appeals of New York, I could easily put my brethren in the minority; but as it is, they are two against one, and I have no option but to yield to the force of numbers—in other words to " the tyranny of majorities." Though twice beaten I am still strong in the true faith, and am ready to suffer for it (moderately) on all proper occasions. My dissenting opinion in 59 *Ga.*, 406, is not only reaffirmed, but is widened in range so as to embrace all cases, actual or possible, in which assignees in bankruptcy sue in the appropriate state courts to collect assets. There is no limit.